ORIGINAL

U.S. DISTRICT COURT
FILED
JUL 20 2018
S.D. OF N.Y.

Approved: [signature]
TARA LAMORTE / KYLE A. WIRSHBA
Assistant United States Attorneys

Before: HONORABLE DEBRA FREEMAN
United States Magistrate Judge
United States District Court
Southern District of New York

DOC #

18 MAG 6236

UNITED STATES OF AMERICA,

- v. -

BRANDON MARTIN, and
TAMEKO LINDO,

Defendants.

**SEALED COMPLAINT**

Violations of
18 U.S.C. §§ 1956(a)(1), 1956(h)

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

MYLES MAHADY, being duly sworn, deposes, and says that he is a Detective with the New York City Police Department ("NYPD"), and charges as follows:

COUNT ONE
(Conspiracy to Commit Money Laundering)

1. From at least in or about 2014, up to and including in or about July 2018, in the Southern District of New York, and elsewhere, BRANDON MARTIN and TAMEKO LINDO, the defendants, and others known and unknown, willfully and knowingly, did combine, conspire, confederate and agree together and with each other to violate Title 18, United States Code, Sections 1956(a)(1)(A)(i) and (B)(i).

2. It was a part and an object of the conspiracy that BRANDON MARTIN and TAMEKO LINDO, the defendants, and others known, and unknown, in an offense affecting interstate and foreign commerce, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, did conduct and attempt to conduct such a

financial transaction, which in fact involved the proceeds of specified unlawful activity with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

3. It was further a part and an object of the conspiracy that BRANDON MARTIN and TAMEKO LINDO, the defendants, and others known and unknown, in an offense affecting interstate and foreign commerce, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, did conduct and attempt to conduct such a financial transaction, which in fact involved the proceeds of specified unlawful activity knowing that the transaction was designed, in whole and in part, to conceal and disguise the nature, location, the source, the ownership, and the control of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

(Title 18 United States Code Section 1956(h).)

COUNT TWO

(Promotional Money Laundering)

4. From at least in or about 2014, up to and including in or about July 2018, in the Southern District of New York and elsewhere, BRANDON MARTIN and TAMEKO LINDO, the defendants, in an offense affecting interstate and foreign commerce, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, did conduct and attempt to conduct such a financial transaction, which in fact involved the proceeds of specified unlawful activity, to wit, violations of the Travel Act, Title 18, United States Code, Sections 1952(a)(1) and (a)(3), with the intent to promote the carrying on of specified unlawful activity, to wit, on or about January 1, 2018, MARTIN and LINDO caused proceeds from their prostitution business to be transferred to another business and entity for purposes of promoting violations of the Travel Act, Title 18, United States Code, Sections 1952(a)(1) and (a)(3).

(Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2.)

COUNT THREE
(Concealment Money Laundering)

5. From at least in or about 2014, up to and including in or about July 2018, in the Southern District of New York and elsewhere, BRANDON MARTIN and TAMEKO LINDO, the defendants, in an offense affecting interstate and foreign commerce, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, did conduct or attempt to conduct such a financial transaction which in fact involved the proceeds of specified unlawful activity to wit, violations of the Travel Act, Title 18, United States Code, Sections 1952(a)(1) and (a)(3), knowing that the transaction was designed, in whole or in part, to conceal or disguise the nature, location, the source, the ownership, or the control of the proceeds of the specified unlawful activity, to wit, on or about February 21, 2017, MARTIN and LINDO caused proceeds of their prostitution business to be deposited into a bank account beneficially controlled by them, and thereafter made cash withdrawals from those bank accounts.

(Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

6. I am a Detective with the NYPD assigned to the Homeland Security Investigations ("HSI") El Dorado Task Force and I have been personally involved in the investigation of this matter. The information contained herein is based upon my own observations, conversations with other law enforcement agents and others, and my examination of bank records, reports, and records prepared by others. Because this complaint is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

**OVERVIEW OF THE DEFENDANTS' ONLINE ESCORT SCHEME**

7. From my involvement in this investigation, I have learned of a scheme in which BRANDON MARTIN and TAMEKO LINDO, the defendants, and others, known and unknown, operated an online escort service that utilized various bank accounts to take in the proceeds of their escort scheme and then deposited

these illicit proceeds into the defendants' personal and corporate bank accounts, and used the proceeds to further the illegal scheme. I have learned, in substance and in part, the following details about the scheme:

a. In or about 2014, MARTIN registered the internet-based website domain www.flawlessescorts.com (the "Website"). The Website was registered with and is hosted by a particular cloud computing company located in the Southern District of New York ("Host Company-1").

b. Based on my observations, the Website includes links to web pages maintained under the www.flawlessescorts.com domain depicting various female "escorts." For each escort, the Website contains photographs of those escorts, often partially dressed or nude and often posed in sexually explicit positions. The Website also displays each escort's schedule, including the city in which she is available, the days and hours when she is available, and the hourly rate that is charged for a client's time with the escort. Upon clicking the image of an escort, a visitor to the Website is brought to a more comprehensive description of the escort that details the escort's height, weight, bust, and hip measurements.

c. The Website also provides "contact details" through which a visitor to the Website can make an appointment with a particular escort. One of the phone numbers listed, is registered to "Flawless Referrals" with a billing address at a particular address in Parkland, Florida ("Address-1"), according to records from the phone provider. Based on law enforcement and open databases, as well as United States Post Office change of address forms and law enforcement surveillance, I believe that MARTIN and LINDO reside together at Address-1.

d. In addition to controlling the Website, MARTIN and LINDO advertised for the Website and particular escorts on www.eros.com ("Eros"), which, based on my experience investigating the prostitution industry, I know to be an advertising platform used by individual prostitutes and prostitution agencies.

e. On or about April 21, 2018, law enforcement accessed the Eros.com website and located advertisements for escorts available in the area of Tampa, Florida, from the Flawless Escorts website. One of these postings advertised a particular escort with an advertisement titled "Nina Highly

Recommended GFE."[1] The advertisement specified the dates "Nina" was available for an appointment; showed approximately eight photographs of "Nina" wearing lingerie and in provocative poses; and provided "Nina's" measurements and hourly rate. The advertisement further provided "Your entire encounter will be intensely hot and pleasingly out of control from the minute you meet, although she does like to prolong the moment."

f. The advertisement also provided an email address through which a visitor to the posting could book an appointment: flawlesstammy7@gmail.com. Based on payment details for online accounts associated with flawlesstammy7@gmail.com, as well as the content of the email account itself, I believe that flawlesstammy7@gmail.com is controlled by LINDO.

g. Also on or about April 21, 2018, law enforcement, utilizing a covert email address, sent an email to flawlesstammy7@gmail.com requesting an appointment with "Nina" for April 22, 2018. Among other things, the email stated that the interested client saw Nina's ad on Eros, and requested her for approximately 3 hours for himself and his wife. Shortly afterwards, the covert email address received an automated response from flawlesstammy7@gmail.com. The automated response stated, among other things, "Thank you for contacting Flawless!!! We appreciate your interest in our amazing GFE/PSE[2] providers and look forward to working with you to get your appointment scheduled." The next day, on or about April 22, 2018, the covert email address received an email from flawlesstammy7@gmail.com, among other things, "This is Tammy with Flawless, pleasure to meet you, I book Nina's appointments."

h. MARTIN and LINDO repeatedly posted advertisements featuring "Nina" on Eros. These advertisements often listed flawlesstammy7@gmail.com as contact information, and occasionally included an additional contact email: flawbrian@hotmail.com. Based on my review of registration and payment details for online accounts associated with flawbrian@hotmail.com, as well as the content of the email

---

[1] Based on my participation in previous investigations, I have come to learn that "GFE" stands for "Girlfriend Experience," and refers to an escort willing to perform unprotected sex.

[2] Based on my participation in previous investigations, I have come to learn that "PSE" stands for "Porn Star Experience," and refers to an escort willing to engage in unprotected sex, oral sex, and an exaggerated sexual performance.

account itself, I believe flawbrian@hotmail.com is controlled by MARTIN.

i. Escorts employed by MARTIN and LINDO, the defendants, met with clients in the Southern District of New York and elsewhere for the purposes of prostitution. To facilitate these encounters, MARTIN and LINDO would provide travel and hotel accommodations to their escort employees through, among other services, Priceline.com. Records from Priceline.com reveal that from on or about January 2, 2015, until January 30, 2018, an account with the username flawbrian@hotmail.com made approximately 3,276 hotel bookings through Priceline.com nationwide at a cost of approximately $725,093.47. Although each of these bookings was made in a woman's name, MARTIN provided his own contact and billing information, often booking travel with a credit card in his own name. In addition, according to records from an internet service provider, the IP address associated with many of these bookings was assigned to MARTIN and LINDO's home at Address-1.

j. When traveling to meet clients, MARTIN and LINDO require escorts to follow particular protocols. According to the "Flawless Touring Regulations" (the "Regulations"), escorts must always "travel with multiple outfits and lingerie (stockings, fishnets, heels, garters, bikini, Nurse Outfits, School girl outfit, sexy dress, going out dress, yoga pants, mini skirt, Jeans and T-Shirt etc.)" and must bring a "[l]arge amount of adult [s]upplies."

k. Once checked into the hotel room booked by MARTIN, escorts are required to ensure "at least 3 candles . . . are lit" and that "fresh towels [are] available for the client." The Regulations instruct that "[g]ood hygiene is important" and that the escort "should always be clean and fresh" for each client. "Remember," the Regulations state, "your clients are paying for a fantasy and they want their money[']s worth."

l. Upon the client's arrival, the Regulations demand that the escort "immediately text the office that he is there so we know to start his time. Before beginning the appointment you must check his ID and any other info we sent you in the text to make everything matches. Once everything matches up. Count donation and begin appointment" [sic].

m. The Regulations state, "Each girl is expected to see a minimum of 7 clients per day. The time for each appointment may vary but it is an hour minimum for each

appointment. We try our best to space out all of your appointments at least 15-30 mins apart so you have enough time to get ready for each client" [sic].

n. The experience of particular escorts is largely consistent with what the Regulations require and what the investigation has revealed about MARTIN and LINDO's scheme. For example, on or about March 17, 2018, a female Mexican National ("Escort-1") arrived at the Dallas/Fort Worth International Airport from Mexico City, Mexico. During a screening interview with law enforcement agents, Escort-1 admitted to working for two prostitution agencies, one of which she identified as Flawless Escorts. Escort-1 stated that she worked for Flawless Escorts from January 2016 through December 2017. Escort-1 identified "Tammy" as the person who hired her, and "Brian" as the person who scheduled her clients. Escort-1 stated that Flawless Escorts employed her to provide companionship and sex to clients; that she serviced anywhere between one and three clients a day; and that her fee was $325.00 per hour.

o. Indeed, Priceline.com records reveal that the account associated with MARTIN booked approximately 181 hotel rooms for Escort-1 in at least twelve states and the District of Columbia. In many cases, the bookings were completed from an IP address associated with MARTIN and LINDO's home, using the flawbrian@hotmail.com email address as contact, and a credit card in MARTIN's name.

## THE DEFENDANTS' LAUNDERING OF THE PROCEEDS OF THE ESCORT SCHEME

8. From my involvement in this investigation, I have learned the following:

a. To collect the illegal proceeds, MARTIN and LINDO maintain a myriad of bank accounts. MARTIN operates at least six personal bank accounts, LINDO operates at least one personal bank account, and MARTIN and LINDO operate at least four corporate bank accounts (the "Flawless Corporate Accounts").

b. The Flawless Corporate Accounts were opened on behalf of a corporation entitled "Flawless Referrals Ent. Inc." (the "Corporation") using a corporate address of Address-1. According to corporate records, the Corporation was

first incorporated on or about September 5, 2014 with BRANDON MARTIN and TAMEKA LINDO, the defendants, as its only officers or directors. The Corporation's articles of incorporation state that the purpose of the corporation is "any and all lawful business."

c. The Corporation, however, was not always named "Flawless Referrals Ent. Inc." According to corporate records, at the time of incorporation, the Corporation was named "Flawless Escorts Ent. Inc." Four days after incorporation, however, on or about September 9, 2014, MARTIN requested that the Florida Department of State change the name of the Corporation to "Flawless Referrals Ent. Inc." It was only after that name change--from "Escorts" to "Referrals"-—that the Flawless Corporate Accounts were opened.

d. MARTIN and LINDO required escorts to remit a portion of prostitution proceeds to MARTIN and LINDO's bank accounts, typically through cash deposits from a branch near where the escort was working. According to the Regulations, escorts "are required to do a bank drop every morning . . . ."

e. Bank records reveal that from in or about October 2015 through in or about January 2018, one of the MARTIN personal accounts received approximately $413,100.02 from 414 cash deposits spread across at least eleven states. Nonetheless, all withdrawals from the account were made in either Florida, where MARTIN resides, or Massachusetts. Similarly, from in or about August 2015 to in or about June 2016, a LINDO personal account received approximately $176,254.15 from 179 cash deposits spread across at least nine states and the District of Columbia. All withdrawals from this LINDO personal account were made in Florida, where LINDO resides.

f. This practice was also corroborated by Escort-1, who stated that she deposited a portion of the fees that she was paid for sex into various bank accounts. Based on the information provided by Escort-1, including Escort-1's phone, and my review of banking records, Escort-1 deposited prostitution proceeds into accounts owned and operated by "Flawless Referrals," "Brandon Martin," and "Tameka Lindo."

g. For example, on or about February 17, 2017, Priceline.com records show that Escort-1 traveled to and checked into a particular hotel in Rye Brook, New York on a reservation booked by an account with username flawbrian@hotmail.com.

Escort-1 stayed at the hotel until on or about February 21, 2017. On the day she checked out, on or about February 21, 2017, Escort-1 deposited into MARTIN's personal account $1,905 in cash at bank branches in Rye Brook, New York, and $815 in cash at a branch in New York, New York according to bank records.

h. After the proceeds of their prostitution scheme were deposited into MARTIN's personal accounts, LINDO's personal account, and the Flawless Corporate Accounts, bank records reveal that MARTIN and LINDO withdrew or transferred these funds from these accounts, allowing them access to the funds while concealing the true nature and source of these funds.

i. For example, bank records show that from in or about June 2016 through in or about February 2018, one of the Flawless Corporate Accounts received approximately $217,622.00 from 181 cash deposits from at least seven states. During that period, approximately $16,082.74 was transferred to MARTIN's personal accounts; approximately $23,325.67 was transferred to LINDO's personal account; and approximately $33,113.00 was withdrawn in 60 cash withdrawals from Florida, where MARTIN and LINDO reside.

j. In addition, bank records reveal that MARTIN and LINDO used the proceeds of the prostitution scheme to further their illegal escort business. For example, according to bank records, from in or about January 2015 through in or about June 2016, the aforementioned accounts collectively paid approximately $180,612.31 to the owners of Eros for advertising for the Website and for individual escorts. MARTIN and LINDO also used their personal accounts and the Flawless Corporate Accounts to make payments to Host Company-1 in the Southern District of New York, including on January 1, 2018; February 1, 2018; March 1, 2018; April 1, 2018; and May 1, 2018.

WHEREFORE, deponent respectfully requests that warrants be issued for the arrests of BRANDON MARTIN and TAMEKA LINDO, the defendants, and that they be arrested, imprisoned, or bailed, as the case may be.

Det. Myles Mahady #3607

MYLES MAHADY
Task Force Officer
Homeland Security Investigations
El Dorado Task Force

Sworn to before me this
20th day of July 2018

HONORABLE DEBRA FREEMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK